Good morning, Your Honors. David Ellison on behalf of Appellant Dominic Alessio. I'd like to begin by pointing to the fundamental difference that this case really focuses on, which is the standard for quorum nobis relief. What is fundamental there? The government's position essentially, and the decision's position, is that if the instructions and or the indictment here both track the language of the statute and there's substantial evidence to support the conviction, then quorum nobis relief must be denied, because there is no fundamental error. That is not really what the case law focuses on. What the case law focuses on is whether it appears the defendant may have been convicted for conduct that did not constitute a crime. Now, certainly, if there are instructions or in some cases an indictment that omits an essential element of the crime, then you're going to – it's going to be much easier to reach a conclusion that there was fundamental error. But if you go into the record here, what you find is, I think, the functional equivalent of what happened in cases like Mandel, Walgren, McClelland, and the other cases we've cited. And the standard, of course, in Mandel and the other cases is not whether there's substantial evidence. That really kind of turns it on its head. It's whether there's a high degree of probability that the jury did not rely on the legally incorrect theory. Do you have to rely on the government's closing argument to make your case? Not only on the closing argument. No. I think we start – we start as early as the bill of particulars argument. Well, they brought a bill of particulars in on the furloughs and the day trips in connection with the – that is, they responded on that in terms of the bribery count. On the bribery count. And then the – in closing argument, there's the disavowal of specifically relying on those two elements, two factual aspects. But it goes on to talk about the day-to-day decisions that Santiago was responsible for and presumably making. The everyday decisions. The everyday – do you read the closing argument as saying that the jury couldn't consider the furlough and the day trips as part of the kinds of acts that would be flowing? No. What – where we differ with the government in the decision is that the – in the contemplation of the furlough and the – there has to be a contemporaneous contemplation of the furlough or the – the town trips at the time the crime is committed. I think what happened here is that because the instructions merely tracked the language of the government and Judge Lucas rejected what basically were instructions, and we cite them in the brief, 17, 18, 19, I think, that comported with Sundiamond, what happened was the jury was entitled – felt they were entitled to simply determine that there were later official acts in Santiago's role as a – as a camp administrator. And because they proved those later acts, they had satisfied the requirements of the – of the statute. And in fact, right at the end of the rebuttal argument – let me just get to the language if I can. In closing, right at the end of the rebuttal argument, Mr. Thaler, the prosecutor did the rebuttal, said, even – What's your – what's your site? I'm sorry? What's the page site? You know, I don't have it. It's the very end of the rebuttal argument. And I can get it for you. Even if Dominic Colisio gave these gifts to Santiago only as a tip or gratuity because Santiago was directing his father's imprisonment, Dominic was guilty under the law of count two. They did have to find an official act. It's helpful when you have your ER sites, because we have them, and it's – it was always nice to be able to read along with what you're reading. Oh, I'm sorry. I can get it for you if you want. It would be helpful. I'd sort of like to know where you're choosing from. Well, let's – that's fine. I mean, it's the very end of the rebuttal argument. I'm sorry, Your Honor. I didn't have the site. But we also – we – again, we rely on Judge Lucas's – 262. I'm pretty sure it's in the brief as well. But at the – at every stage in the trial, the government took the position that they didn't have to prove that Bud Olisio had any official act in mind when he committed the crime. And at every stage, Judge Lucas denied our motions based on that. That Judge Lucas then refused to give what turned out to be correct instructions under Sun Diamond, and the government was allowed to argue as they did. The – Sun Diamond said it's not enough to have a – what they call a reservoir of – of goodwill. And, in fact, that's what the government was basically arguing here. The government talked about how there were all these overt acts, but certainly three months – I'm sorry – not overt acts, official acts. You know, the furlough didn't happen until – never – subject came – never came up until three months after the gratuity was given. There was no way to predict that Mr. Olisio's mother would be sick. The – I just want to go to the case law a little bit here. Mandel, McClellan, all those cases talk about how you don't look at the evidence and see if there's sufficient evidence to sustain a – sustain a conviction. In McClellan, they said, we recognize the evidence of trial from which a reasonable jury could have properly concluded inducement was present. Were the jury instructions in those cases comparable to those here? They – No, they were not. Those are the differences, Your Honor. If you – if – in – in those cases, there were simply jury instructions. But the point here is that when you go to the Ninth Circuit, you look at the Ninth Circuit opinion, and the Ninth Circuit opinion says there was overwhelming evidence. But what was the overwhelming evidence of? Overwhelming evidence that he was in a position to exercise day-to-day authority over – over the camp. And, in fact – Well, that's clearly what the government argued, is what you said about that. Yes, that's exactly what the government argued. And that's exactly – Yeah, I think the only question is whether or not the jury instructions permitted the construction that you urged and that the government urged. And it seems to me that the jury instruction given by Judge Lucas, at least as I read it, didn't go that far. It did tie it to an official act. Well, it defined the definition of an official act, but it didn't allow us, and at every stage he rejected, the notion that you had to have a contemporaneous contemplation of a specific act in mind. That's really what Sundiamond focused on. Yes. And what happened here was the government was allowed to argue that, you know, because the – in other words, there could be a conviction, simply because he knew that – that he was the prison camp administrator, and he gave the gratuities. And that was never disputed. So, in fact, when – when what – when the government first argued that Bud Alicio was lying about Mr. Freedman being the source of – and the reason – the request coming from – from Mr. Freedman, he – the government accused him of lying. Then got – Mr. Sheridan, the defense lawyer, got up and made his argument. And the government was very concerned, I think. And, in fact, the opinion says that it's evident – page 54 – it's evident that the government's argument was in response to and sought to discredit Petitioner's defense that the gratuities were given purely as a matter of hospitality. And so they went further than they – than they had in their opening argument, and they came back and argued all you need to know – all you need to find is that he's in a position. And then, of course, there have to be overt acts. But Bud Alicio didn't have to contemplate any of those acts. And if you go into the record, you'll see the furlough application. There's no way that – that anybody was contemplating the furlough application. With respect to the town trips, there had only been one town trip. It was a two-hour work detail that occurred with several other prisoners. And – and, in fact, Mr. Santiago had told everyone, including the prosecutors and the FBI before the trial, that an associate warden had told him that it would be okay for the – the Alicios to – to go on some town trips, but keep them to a minimum, keep them infrequent – infrequent. Now, there was only one town trip during the three weeks – and we're only talking about a three-week period, but Mr. Alicio was at the camp before Mr. Santiago took his vacation. And during those three weeks, there was simply one work detail for a couple hours along with a bunch of other prisoners Mr. Alicio's father had been assigned to. So there's no reason why Mr. Santiago, number one, would know that he's getting a gratuity for – for that. And there's no reason for Mr. Alicio to know that his – his father had even taken town trips, or that there was a policy on town trips, that they were allowed, or that supposedly the warden had forbade it. Or if the warden had said no town trips, that an associate warden had said, I talked to the warden, it's okay, just keep them to a minimum. So what you've got is this record where it's not at all clear to the jury. And you have to remember, they acquitted on the bribery count. So at least on the count where there was no question you had to contemplate an official act because you can't influence it without – without having it in your mind, they acquitted him. But on the count where the government argued, wait a minute, all – all we need to prove is what there was really no dispute about, that – that he was who he was, a – a correctional official, and that he, Mr. Alicio, did provide the accommodations, although he said it was simply because Maurice Freedman asked him to do it. Now, Maurice Freedman was – Well, assuming the jury didn't buy that, you know, just a good guy argument, what would they, on the record before it, the evidence before it, have been – thought that the gratuities were for? Just a good guy or – I mean, the government was arguing that this guy – he isn't the Secretary of Agriculture dealing with a bunch of trade associations. He's the supervisor in a prison setting where every day he's going to be making – in a position to make a variety of decisions. And you're saying that that's the same thing as Sundiamond. There has to be some isolation of a particular anticipated act, even though in the normal course, there are probably any number of acts that the warden or surrogate warden would be taking favorable to one prisoner over another, right? Well, I don't know about favorable, but it's not necessarily favorable one over another, although that's – Well, in favor of Mr. Alicio. That's exactly what the government argued subconsciously, consciously, or whatever. But that's also the point that I think Justice Scalia in Sundiamond was making, which is we have a whole panoply of remedies here, and if you're – if we're going to invoke a felony remedy, that we need to make sure that the defendant is actually contemplating a specific act. It isn't good enough. And in fact, we made that same argument. Mr. Sheridan made the argument that, Your Honor, if you were to speak to a bar association lunch and you get a free lunch out of it, you know, does that mean that the bar association is committed? That's a little more – that's a little more abstract in cause and effect circumstances than the supervising warden in a prison. Well – It just seems to me there's a common sense distinction there. I don't know whether it makes a legal difference. I don't know. That's exactly it. And in fact, when we start talking about, you know, the factual distinctions and the common sense distinctions, you've got to remember we're dealing here with – we're not dealing with businesses in the – you know, dealing every day before the Agriculture Department with the Secretary of Agriculture. We're dealing with people on both sides. Not Santiago, but Mr. Friedman. And we're talking about Mr. Alicio. They're both in the hospitality industry. When, you know, when somebody asks you – who's an appropriate person – asks you to comp somebody, you comp them without even thinking about it. And in fact, you know, Mr. Friedman arranged for a Las Vegas hotel and two or three Las Vegas – other Las Vegas hotels to comp Mr. Santiago for his vacation, his stay in Los Vegas. And nobody – you know, you didn't see Mr. – you know, any of the Las Vegas hotels being comped. Now, admittedly, Mr. Alicio, who was a much younger man in those days – he was a young man. His father was – had just been incarcerated. I think if he had thought twice about it, he probably would have said to himself, wait a minute, you know, Maurice Friedman – and Maurice Friedman was a very special prisoner in that – in that institution. He was a very special prisoner, period. We go through what – you know, the difference – what happened here, in fact, is very inequitable, if you think about it, for the government. Let's not get in – let's not get too far astray. Okay. You're about five minutes over your time, but I want to make sure Judge Gould had an opportunity to ask any questions that he wanted to. Yeah. No, I don't have any questions. Thank you. All right. Thanks, counsel. We'll give you some time for a break. Could I have a minute or so if needed for – Yes. Yes. Thank you. My name is Anne Voights, representing the government. If I may, I'd like to address a number of the points that counsel for Petitioner raised in his opening argument. With respect to the initial argument, what is an appropriate standard, we do think Mandel is – Would you mind speaking up just a bit? Certainly. Thank you. With respect to the initial question, what is the appropriate standard on this Corum – to review this Corum Nobis petition, I think Mandel is not an appropriate case because, as the Petitioner's counsel has acknowledged, it's a case in which the instructions explicitly invited the sort of error – implicitly invited the jury to rely on one of two alternative theories, one of which did not constitute a crime. We think that's very different from the circumstances here, where what you have is a case where there simply was no error in the instructions. The question is, did they go far enough? Well, what was wrong with the tendered instruction given by the defense? If you look at the instructions, the three instructions that the defense focuses on that they asked for that were not given, I think, indeed, they were essentially cumulative of what the court did give. Well, I'm looking at number 17, which says, In order to sustain this burden of proof by neither count one or two, it's necessary for the government to show that the defendant had in mind the official act for which he was giving additional compensation or reward at the time that the value was given. If the government should fail to make such a showing, you must find the defendant not guilty on both counts of the indictment. What's wrong with that instruction? I don't think there is anything wrong with that. But I think if you look at the instructions that the court did give, both initially and then also the ones that, in its conference, it agreed to give again when they re-instructed on count two, it did cover that, because it instructed both on the union of act and intent. It reputedly said that for a conviction on count two, it had to be four because of some official act, and it defined some official act, according to the language of the statute. So it included both. I think the defendant's instructions, in fairness, really track Sundiamond. And the Court's instruction, although I think it is a lot more limited than other cases, might allow for the interpretation that would be in violation of Sundiamond. I think, again, if I could add one additional point, the Court also instructed that with respect to purpose, you had to prove purpose, again, that it was by reason of some official act. And it said that it was essentially limited to this intent. It didn't go beyond that. And so I think that does, while not going as specifically as some of the defendant's instructions to the Sundiamond issue about the issue of position, it made it clear that it needed to be because of some official act. It was unlike Sundiamond, where the instructions explicitly said that you did not need it to be because of any act at all. But if some official act could include a future act, doesn't that run afoul of Sundiamond? No, I think some official act, subsequent case law has suggested, and the Court's appeal has suggested that essentially the illegal gratuity statute can cover a number of things. Either a prior act can be essentially a thank you, a tip in effect, or it can be essentially sort of, you know, here's, I have in mind a future act. Right, but if you don't have in mind the future act, but you can reasonably assume there's going to be a future act, it seems to me that runs afoul of Sundiamond. And it, those instructions conceivably could allow that interpretation. Well, I think Sundiamond itself does not really specify the degree to which that link has to exist. It says that there has to be some official act in mind, but it doesn't address the, essentially the closeness of the nexus that's required. There are some subsequent cases that have explored that, but again, most suggest that what you need is the, for example, with Hulk, that you need essentially to be a substantial factor in the giving of the gift. And I think when you look at the evidence here, it does support that. Well, what does, what do we make of the government's explicit argument to the jury that, and disclaimer of trying to link it to the furlough and to the town trips? What was, what was the official act other than just the notion that Santiago was in a position to do something day to day that might be favorable to Mr. Alicio? I think first you take it in context to both of the government's opening and closing where they correctly stated the elements and where they said that the evidence on count two was the same as the evidence on count one. Specifically, you had the town trips and the furlough that they used as evidence. And then you're correct in rebuttal, they did. Right before the jury went out in rebuttal. I don't know why you think closing or opening is more important than the rebuttal. When the defense has no opportunity to stand. I'm sorry? I don't necessarily think it is more important, but I do think it is helpful to consider that they did at least initially get it correct. Right. But just before the jury goes out and at a time when the defense can't respond at all, the government argues an impermissible theory. And so the jury gets the instructions. They aren't instructed otherwise. Why isn't it a reasonable inference that they could have convicted him on an impermissible theory? I think, again, when you look at the instructions in both government counsel and the court, the court was the one who would hand down, who would explain the elements of the count. And I think when you look at the continued repetition of the importance of having an official act that had to be four because, again, they kept repeating that language, this was not a case where they said you can do it because of his position. And, frankly, we would distinguish saying he had responsibility. He was for the prisoner versus saying as here where they said you have these specific acts. You have the evidence of the furlough. You have the evidence with respect to the town visits, one of which occurred before, several of which occurred shortly thereafter. The furlough, which clearly was based on, although defense counsel said that her wife's condition arose after the fact. Indeed, the doctor testified at trial that the conditions he was referring to had existed for a while. So all of these things that was evidence were sort of in motion at the time of the comp, and I think it was reasonable for the jury to rely on those inferences. Well, I'm not sure I understand what you just said. The specific statement to the jury was that the government doesn't contend that at the time the gifts were given, they were given with the purpose of influencing Santiago to give furloughs to Dominic's father or to influence specifically that Santiago should be given town trips. They were given because Eliseo knew Santiago from day to day would make decisions as camp administrator that would affect his father. He goes on to say the gifts were given because of his position. Now, the government has conceded that that's an improper argument, so what would the jury have been led to believe it should be looking to? Would it not consider the furlough, not consider the day trips, and therefore it morphs off into just the general notion that Santiago was in a position in some fashion day to day to do something good for his father? Well, I think with respect to that, I think that, frankly, when you consider both the opening and closing of the rebuttal, I think ultimately there was confusion. I think it's not clear necessarily which it was. So I think the jury could still and indeed did rely on those two acts when it was concerning because that was essentially all of the evidence at trial was about those acts. It was about the furloughs. It was about the town visits and the fact that both had been prohibited by the warden made clear to Santiago. Santiago had in turn passed on that information to Petitioner's father and to his uncle. And yet nevertheless, as Santiago testified, after he accepted the gifts, he felt that he had essentially been bought. Right. But how could they have in mind the furloughs? What evidence was there to support the fact that Alessio had in mind the furloughs when he extended the gratuity? I think when you look at both some of the comments that were made during the actual trip, and I think it is still valid to consider what happened afterwards, but specifically I'd point to the fact that during the vacation when they were going on the tour of the Alessio offices, at one point the Petitioner said, we're hoping to have my dad home soon. And although that was in connection with parole, I think it's legitimate to think that they were considering any option. I mean, when you consider the fact that then in their subsequent conversations Petitioner had said that he was making every effort to try and secure parole and furlough for his father, I think it's legitimate to sort of carry that back and use that to make appropriate inferences about what his intent was at the time. I think Petitioner indeed testified at trial that he didn't comp people simply out of goodwill or sheer random generosity. He did it because he expected something in return. And given the evidence, I think, at trial here that Petitioner thought that Expected something in return doesn't quite cut it, though, under Sundiamond. That's the difference. But I think this is very different from Sundiamond where there were two items that were referenced in the indictment, but they weren't linked to the gratuity. And indeed, the jury was specifically told they can just give this essentially to create goodwill for future unspecified acts. And I think that's very different from a case here where even if we're talking about simply the day-to-day acts, this is a prison official who at that moment has immediate control over Petitioner's father's conditions of confinement, including town trips, including furloughs. That's a very different situation from giving a gratuity to a Cabinet secretary who has... You said the cases since Sundiamond have extrapolated or applied it. What's the closest case you can cite that is comparable to this case? I would refer the Court to two cases. One is the United States v. Persico. It's an unreported district court case. I can provide that site if you would like. It's 2000 Westlaw 145750, where they simply assume... That's hardly precedent. Yeah, sorry. How about one that's precedential? Unfortunately, I would refer the Court to essentially they're out-of-circuit cases, so again, not precedent, but perhaps helpful. Well, do you have out-of-circuit court cases? Yes. United States v. On, I think is helpful. A.H.M.? Yes. It was a district court case that's referred to in our brief. I'd be happy again... D.C. Circuit, right? Yes. As indeed the district court observed in this case, there is a dearth of published law subsequently interpreting Sundiamond, and those that do have acknowledged that Sundiamond left a significant amount unclear about what constitutes the requirement of for or because. And so, for example, in the United States v. Hulk, the court, the district court concluded that what they were looking for was a substantial factor, that the official had to be a substantial factor in the gratuity. And on, if I could go back to that for a second. Wasn't that a sufficiency case? Yes. So it's not a question of instructional error. Correct. But again, here I think our position is that there is no instructional error. Indeed, they conceded that the statute language was both recited to the jury and, again, rephrased, that the elements did track it. There was nothing in the elements saying that you could go ahead and convict based solely on a theory that this was given to Santiago because of his position. Their argument is simply that it didn't go far enough. And we think when you consider the evidence of trial, when you consider the instructions about the unity of act and intent, defining an official act, and the repetition of the language for or because of an official act, combined with the fact that both the court and the government told the jury to rely on the court's instructions as to the law, I think that it's appropriate to conclude that there was indeed no error here, and certainly not one that would rise to the level of fundamental error in this case. Counsel, I have a question for you. Let's assume that a gratuity giver stipulates, when I gave this gratuity, I did it with the aim of influencing official acts, but I didn't have a particular act in mind. What's the result under Sun-Diamond? I think there, under Sun-Diamond, it is arguably correct. If they stipulated that they did it with an official act in mind, and Sun-Diamond says that they require a specific act, I think there's some question, however, as to how clear that identification has to be. And again, because there's a dearth of subsequent law clarifying that, it is somewhat unclear at this point. So, if there are no further questions, I would be happy to submit. Anything further? No. Thank you, Counsel. Thank you. Why don't you put a few minutes on that? For Judge Kishore, the site is 9RT1547 at the very end of the argument. Just briefly, I don't want to belabor the point that, you know, the boilerplate instruction on union of act and intent simply does not address the issue that we have here. It's that simple. I would be able to do that. Well, it's different from Sun-Diamond. Sun-Diamond didn't have that, so it's a distinction. Yes, you're right, Your Honor. In Rodriguez, a case that the government cited for the notion that there's a presumption that the jury follows the instructions, the court specifically at 159F3451, and we cite it in footnote 24 of our brief, and at pages, I think, 35 to 38, we deal in our opening brief with all of these instructions cases. But in that case in particular, the Ninth Circuit said that the prosecutor does not speak as a mere partisan. He speaks on behalf of a government interested in doing justice. And it went on to point out that where there are no – where there is no curative or no curative instruction is given, you've got a problem. Just going on a little bit. There was no objection here. I'm sorry? There was no objection. Yes, there was in that case. No, I mean, in this case. There was a written objection. Well, that was after the curative instruction. There was an objection to the jury – to the failure to give the jury – the failure to give the jury instruction. Well, a curative instruction normally comes where there's been some objection, and the court intervenes and gives a curative instruction. Well, and we cite some case law in this.  We give the instructions that we asked for. We were not in a position to – Okay. Now I understand your point. Yeah. Thank you, Your Honor. What's your client's status at this point? I'm sorry? What's your client's status at this point? My client's status is that he's in heavily regulated industries, and for 30-some odd years, he has been limited in terms of how he can and what business opportunities he can even take advantage of because – and this is in his declaration – because he has a felony conviction. He served six months in prison as a result of this conviction. That's why it's a – you know, he's certainly long since – 30 years ago, 25 years ago, he ended his, you know, probation, parole – probation, parole, whatever it was. And that's why we're here seeking your, you know, relief, coronavirus relief. But it continues to affect him. And in his declaration, he pointed out a friend of his – you know, he's never had a problem since – but a friend of his ran for sheriff of San Diego County, and the other side came in and said, this man's a friend of a convicted felon. I mean, this continues to poison his life 30 years later. So, I mean, the government doesn't dispute under Hirabayashi and some of the other cases. Mandel was a case where, you know, it was decided 10 years later. And frankly, they didn't have the record in Mandel in terms of the continuing impacts in a very substantial and substantive way that Mr. Alicio suffers to this day. Yeah. Counsel, I have the same question for you that I asked the government. Let's assume that a gratuity giver stipulates, I'm giving these gifts because I aim to affect official actions, but I don't have those actions in mind to specify now. What's the result under Sundiamond? Well, Sundiamond was a gratuity case. And I think you're really talking about the bribery statute when you're talking about affecting or influencing, but the answer either way is the same. An element of both of those crimes is the contemplation of a specific act. I think it has to be certainly under the gratuity statute. It has to be where – and again, in this case, the jury acquitted on the notion that he tried to influence him. We got an acquittal on that one. But I think the answer is, under either statute, you have to have a specific act in mind, certainly. That's a heck of a loophole in the statute, isn't it? Well – You can go ahead and bribe somebody or give it to somebody with a very specific intent to influence the official acts. I was a prison administrator and say, but if I don't specify which one, I'm okay. Well, you know, in the – Ms. Vines cited the on case. The on case was a gratuity case, but it was a case where the defense was – and this was, again, an appeal from a conviction – but the defense was, well, you know, I went in there time and time again and they gave me money every time, but, you know, I didn't have anything really in mind. And they, you know, they convicted him accepting the gratuities. I mean, you know, juries, I think, understand. Your – Judge Gould posed a very hard case. And I have to say, I gave you my reaction to the bribery count, because that was the count that – the way you phrased the question, you know, you were really asking about. It may be that if you're talking about bribery where you have the corrupt intent to influence, maybe you don't need to have the specific act in mind. That's a very good question. I think it's open under Sundiamond. But Sundiamond, in this case, and on, were all gratuity cases. And on, they convicted him and the Court of Appeals affirmed the conviction. You know, they said the jury could see what was going on here. You don't accept money every time you go into this, you know, massage parlor that's more of a – more than a massage parlor. You know, it's second, third, fourth time. At some point, you know, you know what you're getting your money for. That's what really distinguishes that case from this case, Your Honor. Okay. Thank you. Thank you, counsel. Thank you both for your arguments. It's an interesting case. And that is the last case on our oral argument calendar this morning, so we'll be in recess. All rise. The Court of Discussions is adjourned.
judges: Thomas, Fisher, Gould